IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **GREAT AMERICAN INSURANCE COMPANY,** *Plaintiff,* | § § § § § | |
| vs. | § § § | 6:21-CV-01028-ADA |
| **LC PAVING & CONSTRUCTION, LLC, LARRY LEE SMITH and COLBI SMITH,** | § § § § § § | |
| *Defendants.* | § | |

### ORDER ON PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

Before the Court is Plaintiff's Motion for Default Judgment against LC Paving & Construction, LLC ("LC"), Larry Lee Smith, and Colbi Smith (collectively, "Defendants"). ECF No. 12. The Court reviewed the motion, the governing law, and the case file. The Court **GRANTS-IN-PART** Plaintiffs' Motion for Default Judgment.

### I. BACKGROUND

This action arises out of an Indemnification Agreement. On November 20, 2019, Great American Insurance Company ("Great American") entered into an Agreement of Indemnity (the "Agreement") with LC, a Texas limited liability company whose members are Larry Lee Smith and Colbi Smith. ECF No. 1 ¶¶ 1, 2, 8; ECF No. 12-1, Ex. A, ¶ 5(a). Under the Agreement, Great American would issue contract surety bonds on behalf of LC so that LC could bid on and be awarded construction contracts. ECF No. 1 ¶ 8. In exchange for Great American issuing bonds on behalf of LC, LC and its indemnitors—Larry Lee Smith and Colbi Smith (collectively, the "Indemnitors")—"jointly and severally" agreed to "exonerate, indemnify, hold harmless, and keep"

Great American "indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature . . . and from and against any and all such losses and/or expenses which [Great American] may sustain and incur" under any contract surety bond issued by Great American on behalf of LC. *Id.* at ¶ 9; ECF No. 12-1, Ex. A, ¶ 5(a); ECF No. 12-1, Ex. 1, 1–2. Additionally, Great American and LC agreed that Defendants would, jointly and severally, deposit with Great American, upon request as soon as liability arising under the contract surety bonds exists or is asserted, an amount of money that would be used to exonerate and indemnify Great American for any liability, loss, or expense related to (1) being requested to execute or procure, or actually executing and procuring bonds on behalf of LC, (2) failure of LC to perform or comply with the Agreement, or (3) upon demand by Great American if liability exists or is asserted against Great American. ECF No. 1 ¶ 10; ECF No. 12-1, Ex. A, ¶ 5(a); ECF No. 12-1, Ex. 1, 1.

After entering into the Agreement, Great American alleges that LC was awarded a construction contract (the "Contract") by the City of Santa Clara, Texas (the "City") in the amount of $233,176. ECF No. 1 ¶ 11; ECF No. 12-1, Ex. A, ¶ 5(b); ECF No. 12-1, Ex. A-2.  On August 28, 2020, Great American issued two bonds, a Performance Bond and a Payment Bond, both numbered 3219307 (collectively, the "Bonds"), to the City in the penal sum of $233,176 per the Agreement. ECF No. 1 ¶ 12; ECF No. 12-1, Ex. A, ¶ 5(c).

On September 1, 2021, the City declared LC to be in default of the Contract and terminated it. ECF No. 1 ¶ 13; ECF No. 12-1, Ex. A, ¶ 5(d). Upon terminating the Contract, the City demanded Great American perform its obligations under the Performance Bond. ECF No. 1 ¶ 13; ECF No. 12-1, Ex. A, ¶ 5(d). According to Great American, performance of its obligations under the Performance Bond—procuring and executing the Performance Bond—exposed Great American to losses and expense. ECF No. 1 ¶¶ 13, 9; ECF No. 12-1, Ex. A, ¶¶ 5(a), (e). Accordingly, on

September 9, 2021, Great American made a demand for a sum of money in the amount of the Performance Bond—$233,176—to Defendants. ECF No. 12-1, Ex. A, ¶ 5(e). Great American then made a second demand for the money on September 22, 2021. *Id.* at ¶ 5(f). Larry Lee Lewis assured Great American on September 9, 2021 that Defendants would provide a letter of credit for $233,176, but Defendants never deposited that amount with Great American. ECF No. 1 ¶¶ 14; ECF No. 12-1, Ex. A, ¶ 5(e).

On October 5, 2021, Great American filed this suit, asserting that Defendants failed to perform or comply with the Agreement. ECF No. 1. In its Complaint, Great American requests (1) specific performance of the Agreement, (2) indemnification for costs and expenses incurred in executing the Bonds, (3) reasonable attorney's fees and (4) prejudgment and post-judgment interests and court costs. *Id.* at ¶¶ 20, 23, 24, 26, 27. Great American properly served LC, Larry Lee Smith, and Colbi Smith on October 12, 2021. ECF No. 6; ECF No. 7; ECF No. 8. None of the Defendants answered, appeared, or otherwise defended themselves in this action.

On November 5, 2021, Great American filed a request for the Clerk of the Court to enter a default against the Defendants. ECF. No. 9. On November 9, 2021, the Clerk of the Court entered the default of the Defendants. ECF No. 11.

On February 14, 2022, Great American filed a Motion for Default Judgment. ECF No. 12. LC, Larry Lee Smith, and Colbi Smith have not responded.

## II. LEGAL STANDARD

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). A "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in

default." *Settlement Funding, LLC v. TransAmerica Occidental Life Ins. Co.*, 555 F.3d 422, 424 (5th Cir. 2009).

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After a defendant has defaulted, the Court may enter a default judgment upon motion. Fed. R. Civ. P. 55(b). Additionally, the plaintiff must file an affidavit stating whether the defendant is in military service before the Court can issue a default judgement. 50 U.S.C § 3931.

"In determining whether to enter a default judgment against a defendant, Courts in the Fifth Circuit use a three-part analysis: (1) whether default judgment is procedurally warranted; (2) whether the [] Complaint sufficiently sets forth facts establishing that [plaintiff] is entitled to relief; and (3) what form of relief, if any, the [plaintiff] should receive." *United States v. Giles*, 538 F. Supp. 2d 990, 993 (W.D. Tex. 2008).

The Fifth Circuit uses six factors to determine whether a default judgment is procedurally warranted. *Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 752 (N.D. Tex. 2020) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The factors are: "(1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Id*.

In considering whether the Complaint sets forth facts establishing that plaintiff is entitled to relief, the court accepts as true the well-pleaded allegations of facts in the complaint (except regarding damages) but must determine whether those facts state a claim upon which relief may

be granted. *United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Thus, for a plaintiff to obtain a default judgment, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206.

### III. DISCUSSION

**1.    Default judgment against Defendants is procedurally warranted.**

Default Judgment against Defendants is procedurally warranted. LC, Larry Lee Smith, and Colbi Smith all received proper service but failed to answer or otherwise respond to the Complaint as required by Federal Rule of Civil Procedure 12. ECF No. 6; ECF No. 7; ECF No. 8. Additionally, as required by 50 U.S.C. § 3931, Great American submitted affidavits stating that Larry Lee Smith and Colbi Smith are not in the military, supporting the affidavit with servicemember status reports for both men. ECF No. 12, Ex. B, B-1, and B-2. Finally, the "procedurally warranted" factors weigh in favor of granting default judgment.

Courts use six factors to determine whether a default judgment is procedurally warranted. *Alvarado*, 444 F. Supp. 3d at 752, and, in this case, all six factors weigh in favor of granting default judgment. First, Defendants have not answered or otherwise appeared before the Court; accordingly, all Great American's well-plead allegations, excepted those related to damages, are accepted as true and no material issues of fact exist. *Id.*; *Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Further, nothing in the record indicates that default resulted from a "good faith mistake or excusable neglect" and the Court finds no substantial prejudice against Defendants—all three defendants received proper notice and had ample time to appear before the Court. Defendants failure to appear is grounds for default. Fed. R. Civ. P. 55. Additionally, default would not be a harsh result in this situation

because judgement would be the equivalent to what Great American is entitled to receive by law. Finally, based on the facts known to the Court, the Court will have no reason for which it would be obligated to set aside the default.

**2.      Great American's claims have merit.**

Default on its own does not warrant entry of default judgment. *Aire Serv LLC v. Haywood*, No. 6:18-CV-00023-ADA, 2019 WL 10349402, at *2 (W.D. Tex. May 10, 2019). Rather, there must be a sufficient basis in the pleadings, i.e., a plaintiff's claim must have merit. *See id.* Great American alleges that LC and its Indemnitors breached their Agreement with Great American. Under Texas contract principles, this claim has merit.

A plaintiff must establish five elements to prevail on a breach of indemnity agreement claim in Texas: (1) the existence of a valid indemnity agreement; (2) the agreement obligated the defendant to indemnify the plaintiff in the event claims were made on the bonds issued; (3) claims were actually made on the bonds issued; (4) all conditions precedent for recovery have occurred, been performed, waived, or excused; and (5) breach of the agreement caused the plaintiff's damages. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir.1995). Like other contracts in Texas, indemnity agreements should be interpreted to give effect to the parties intent as expressed in the agreement. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998) ("We construe indemnity agreements under the normal rules of contract construction . . . . Our primary goal, of course, is to determine the parties' intent.").

Here, the language of the contract is clear—Defendants must exonerate, indemnify, hold harmless and keep Great American indemnified if Great American suffers losses or incurs costs or expenses related to (1) procuring and executing a bond under the Agreement, (2) Defendants failure to comply with the Agreement, or (3) Great American's enforcement of the Agreement. ECF No.

12-1, Ex. A-1, 1. In addition, if Great American demands payment, as soon as liability exists or is asserted against Great American, related to any of the three above listed causes, Defendants must make the payment. *Id.* Great American suffered losses related to procuring and executing a Performance Bond for Defendants. ECF No. 12-1, Ex. A, ¶ 5(f), (g). Yet, when Great American sent Defendants a demand letter, Defendants did not make a deposit and failed fulfill their obligations under the Agreement. *Id.* at ¶ 5(e). At the time Great American filed its Complaint, it estimated a loss in excess of $200,000 due to Defendants breach. *Id.* Assuming the alleged facts are true, Great American has satisfied the elements for breach of an indemnity agreement.

3. **Great American requests appropriate relief.**

Although a defendant's default concedes the truth of the allegations asserted by the plaintiff relating to liability, that same principle does not extend to damages. Great American seeks an injunction for specific performance of the Agreement and indemnification for losses and costs or expenses incurred in procuring and executing the Performance Bond. ECF No. 1 ¶¶ 20, 23, 24.

***Specific Performance.*** When a party breaches a contract, courts may award the equitable remedy of specific performance. *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 829 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Specific performance is not a cause of action on its own, rather, it serves as a substitute for monetary damages when such damages would not be adequate compensation. *Id.* If an adequate remedy at law exists, then specific performance is not a permissible form of relief. *Id.* Under Texas law, a party seeking specific performance must prove "(1) the contract is reasonably certain, unambiguous, and based on valuable consideration, (2) the contract is fair in every section, void of misrepresentation, misapprehension, fraud, mistake, imposition, or surprise, (3) the parties are so situated that specific performance will not be harsh or oppressive, and (4) the party seeking specific performance must come into court with clean hands."

*Liberty Mut. Ins. Co. v. Nat'l Pers. of Tex., Inc.*, 2004 WL 583531, at *2 (N.D. Tex. Mar. 24, 2004) (citing Texas law). In the context of an indemnity agreement, Texas "[c]ourts have generally granted specific performance . . . based on the premise such remedy is required to protect the surety's bargain." *Id.*

Here, the evidence before the Court establishes that specific performance is an appropriate remedy to enforce the Agreement. In exchange for issuing the Bonds to Defendants, Great American negotiated the right to demand collateral as part of the bargain. LC acknowledged in the Agreement, "that failure of [LC] to deposit with [Great American], immediately upon demand, the sum demanded by [Great American] as payment shall cause irreparable harm to [Great American] for which [Great American] has no adequate remedy at law." ECF No. 12-1, Ex. A-1, 2. The Defendants have not responded to either of Great American's demands for deposit. There is no ambiguity or surprise in this contract; the Agreement states that the Defendants agree that Great American is entitled to "any and all injunctive relief for specific performance of any or all of the obligations of the [Defendants] under this Agreement." *Id.* Furthermore, there is no indication that specific performance will be harsh or oppressive. Thus, specific performance will merely require that Defendants comply with the Agreement's contractual terms. There is also no evidence that Great American has unclean hands.

Moreover, under the Agreement Great American and Defendants contractually agreed that "vouchers, invoices, an affidavit, or other evidence of any such payments made by [Great American] shall be prima facie evidence of the fact and amount of the [Defendants'] liability to [Great American]." ECF No. 12-1, Ex. A-1, 2. Great American provided an affidavit and documentation of the Bonds it issued. In his affidavit, Ryan Dierkers, Senior Claim Mitigation Specialist at Great American, "made demand upon Defendants in writing for the deposit of the

collateral security by September 9, 2021, in the amount of the penal sum of the Performance Bond of $233,176." ECF No. 12-1, Ex. A, ¶ 5(e). Ryan Dierkers instructed Great American's counsel to send a final written demand, and counsel for Great American sent the second, final demand on September 22, 2021. *Id.* at ¶ 5(f). The affidavit attaches documents that corroborate the damages of $233,176. ECF No. 12-1, Ex. A-2. Both the affidavit and bond documents serve as prima facie evidence in the amount of Defendants are required to deposit. *Id.* at ¶¶ 4(a), 5(e); ECF No. 12-1, Ex. A-2.

*Indemnification.* Under the Agreement, Defendants are obligated to indemnify Great American for any costs or expenses incurred in procuring and executing a bond on Defendants' behalf. ECF No. 12-1, Ex. A-1, 1.

The Court concludes that the Agreement is unambiguous and, thus, will be given legal effect as written. Using the contractually agreed prima facie evidence—invoices and affidavits—the Court finds that there is sufficient evidence to support Great American's claim for indemnification. In his affidavit, Ryan Dierkers, swore that Great American "has incurred and/or will incur expenses" of $4,750 . ECF No. 12-1, Ex. A, ¶ 5(g). Ryan Dierkers does not explain what these expenses cover (e.g., court costs, attorney fees, penalties, interest, or the bond itself) or which invoices support these expenses, and the Court cannot determine if these expenses have been incurred yet.  Due to the ambiguous nature of these "expenses" and to avoid overlapping damage calculations, the Court denies recovery of the $4,750 expenses.

4. **Great American's vaguely requested relief.**

Great American requests "other and further relief, at law or in equity, to which GAIC may be justly entitled." ECF No. 12 at 7.  The Court interprets this vague statement to refer to attorney's fees, reasonable court costs, and interest.

*Attorney's fees.* Here, Great American requested attorney's fees in its Complaint and the Agreement provides that Defendants will indemnify for attorney's fees. ECF No. 1 ¶ ; ECF No. 12-1, Ex. A-1, 1. However, Great American has not requested any specific amount of fees or provided the Court with any evidence in support of what reasonable fees in this case would be. The record contains no billing records or attorney's fees affidavit. Additionally, while Great American requested attorney's fees in Count III of its Complaint, it fails to request or mention attorney's fees in its Motion for Default Judgment. Failure to request attorney's fees in its motion, combined with the failure to provide any support or evidence, leads this Court to deny any recovery for attorney's fees as a part of this motion.[1]

*Other Costs.* Great American also requested reasonable court costs, interest, and expenses arising from this litigation in its Complaint but not explicitly in its motion for default judgment. Because Great American has not submitted evidence that allows the Court to compute the costs, expenses, or applicable interest rate, the Court does not do so. It further remains unclear whether costs, interests, and expenses were computed as part of the $4,750 "expenses."

## IV. CONCLUSION

Based on the foregoing analysis of the facts and legal principles, Plaintiff Great American Insurance Company's Motion for Entry of Default Judgment (ECF No. 12) is **GRANTED-IN-PART**.

Defendants breached the Agreement of Indemnification by failing to deposit the amount demanded by Plaintiff when requested to do so. Defendants are jointly and severally indebted to

---

[1] This Order is not a "prevailing party" ruling Federal Rule of Civil Procedure 54 or W.D. Tex. Loc. Civ. R. CV-54.

Plaintiff in an amount of $233,176, per the Agreement entered into by the Parties and the demands made by Plaintiff.

It is hereby **ORDERED, ADJUDGED AND DECREED** that Plaintiff Great American Insurance Company have and recover of and from Defendants LC Paving & Construction, LLC, Larry Lee Smith, and Colbi Smith, jointly and severally, the principal sum of $233,176. Plaintiff Great American Insurance Company is allowed such writs and processes necessary to enforce and collect this judgment. All relief not expressly granted herein is denied.

IT IS SO ORDERED.

**SIGNED** this 9th day of March, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE